# EXHIBIT 1

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This is a Settlement Agreement and Release ("Agreement") between Alvin and Friends, LLC ("Alvin" or the "Corporate Defendant"), Alvin Clayton ("Clayton"), and Gwen Clayton ("Gwen") (Clayton and Gwen collectively hereinafter the "Individual Defendants"), on the one hand (together, the "Company"), and Joseph Pagan ("Pagan" or "Plaintiff"), on the other hand. The Company and Plaintiff may each be referred to as a "Party," or together, be referred to herein as the "Parties."

**WHEREAS,** a dispute arose between the Parties related to Plaintiff's employment with the Company and the terms and conditions thereof; and

**WHEREAS,** Pagan commenced a case in the United States District Court for the Southern District of New York styled <u>Pagan v. Alvin and Friends, LLC, *et al.*</u>, Case No.: 7:22-cv-1589 (VB) (JCM) (the "Lawsuit");

**WHEREAS,** the Company has denied any and all allegations of wrongdoing asserted by Plaintiff; and

**WHEREAS,** the Parties desire to fully and finally resolve all differences between them.

**NOW THEREFORE,** in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties intending to be bound, do hereby agree as follows:

1. **Non-Admission.** This Agreement is entered into mutually in order to avoid the costs, uncertainty, and vexation of litigation. The terms set out in this Agreement are a compromise settlement of disputed claims, the validity, existence or occurrence of which is expressly disputed by the Parties. This Agreement shall not be admissible evidence in any judicial, administrative, or other legal proceedings for any reason except to enforce the terms of this Agreement.

2. **Consideration.** In consideration for Plaintiff's execution, compliance with, and non-revocation of this Agreement, the Corporate Defendant shall cause Plaintiff to be paid the total gross amount of Twelve Thousand and 00/100 Dollars ($12,000.00) (the "Settlement Payment") payable on the schedule set forth below.

   a. The Settlement Payment shall be made in two equal installments, beginning within thirty (30) days of the Court's Order approving this Agreement as fair and reasonable, and then a second installment within thirty (30) days after the first installment, with each installment paid in the following amounts:

   (i) One check made payable to Joseph Pagan in the total amount of $3,782.67 shall be sent to Joseph Pagan, 2265 Brucker Boulevard, Apartment 5, Bronx, NY 10472. All checks shall be subject to W2 reporting. Mr. Pagan will provide an IRS Form W4 within five (5) business days from the date of execution of this Agreement, and the Corporate Defendant will issue Pagan a W2 at the appropriate time and in compliance with all applicable laws.

   (ii) A check made payable to The Ottinger Firm, P.C., in the amount of $2,217.33 shall be sent to The Ottinger Firm, P.C., 535 Mission St, 14th Floor, San Francisco, CA 94105. The Ottinger Firm, P.C. shall provide a copy of its IRS Form W9 within five (5) business days from the day of execution of this Agreement.

   b. Plaintiff agrees and affirms that the Settlement Payment shall constitute the entire amount of monetary consideration provided to him and his legal counsel under this Agreement and that Plaintiff will not seek any further compensation for any other unpaid wages, wage supplements, injuries, damages, costs, disbursements, or attorneys' fees in connection with any of the matters encompassed in this Agreement or any aspect of Plaintiff's relationship with the Company.  Plaintiff agrees, affirms, and acknowledges that he has been paid all wages and wage supplements and all other amounts owed to him for any reason by the Company.

   c. Plaintiff further agrees that he shall be responsible for payment of all personal taxes that may be due as a result of the Settlement Payment.  Plaintiff understands and agrees that no representation is made by or on behalf of the Company regarding tax obligations or consequences that may arise from this Agreement.  Further, Plaintiff agrees to hold harmless the Company from and against all liens, liabilities, interest and penalties that may be assessed against or incurred by it as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against Plaintiff on the Settlement Payment.

  3. **Claims Released by Plaintiff.**

   a. In exchange for the Settlement Payment and for other good and valuable consideration, receipt of which is hereby acknowledged, Plaintiff and on behalf of his family members, heirs, executors, representatives, trustees, agents, insurers, administrators, legal representatives, successors and assigns (collectively, the "Releasors"), irrevocably and unconditionally fully and forever waive, release and discharge the Company, the Company's parents, subsidiaries, affiliates, divisions, and/or related companies, and each of their respective directors, officers, shareholders, partners, employees, managers, members, agents, attorneys, and successors of the Company ("Releasees") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of Plaintiff's execution of this Agreement, including, without limitation, any claims under any federal, state, local or foreign law, including but not limited to those arising out of, or in any way related to Plaintiff's hire, benefits, employment, termination or separation from employment with the Company and any actual or alleged act, omission, transaction, practice, conduct, occurrence or other matter, whether or not Plaintiff has previously filed such a claim ("Released Claims").

   b. Plaintiff further agrees and acknowledges that Released Claims include, but are not limited to:

   (i) any and all claims under Title VII of the Civil Rights Act, as amended, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, as amended, the Fair Labor Standards Act (to the extent permitted by law), the Equal Pay Act, as amended, the Employee Retirement Income Security Act, as amended (with respect to unvested benefits), the Civil Rights Act of 1991, as amended, Section 1981 of U.S.C. Title 42, the Sarbanes-Oxley Act of 2002, as amended, the Worker Adjustment and Retraining Notification Act, as amended, the National Labor Relations Act, as amended, the Age Discrimination in Employment Act, as amended, the Uniform Services Employment and Reemployment Rights Act, as amended, the Genetic Information Nondiscrimination Act of 2008, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the Occupational Safety and Health Act, the Immigration Reform and Control Act of 1986, the Older Workers' Benefit Protection Act and the Age Discrimination in Employment Act, as amended, the New York State Human Rights Law, the New York Labor Law (including but not limited to the Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, all provisions prohibiting discrimination and retaliation, and all provisions regulating wage and hour law), the New York Civil Rights Law, Section 125 of the New York Workers' Compensation Law,

2

the New York City Human Rights Law, any and all claims pursuant to any other state law and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released;

(ii) any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation and/or severance;

(iii) any and all claims arising under tort, contract and/or quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, negligent or intentional infliction of emotional distress; and

(iv) any and all claims for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements from the beginning of time to the date of Plaintiff's execution of this Agreement.

c. Plaintiff shall not hereafter knowingly, directly or indirectly, commence, continue, assist or participate in any lawsuit, charge, claim or proceeding, in any forum (including but not limited to any court or agency), against the Company for Released Claims, unless directed by court order or subpoena. Plaintiff expressly agrees that if he breaches this Section 3(c): (i) he will be responsible for any attorney's fees incurred by the Company as a result of said breach; and (ii) he shall immediately pay back to the Company all monies paid to him under this Agreement.

d. <u>Specific Release of ADEA and OWBPA Claims</u>.  In further consideration of the benefits provided to Pagan in this Agreement, including but not limited to the Settlement Payment, Releasors hereby irrevocably and unconditionally fully and forever waive, release and discharge Releasees from any and all claims, whether known or unknown, from the beginning of time to the date of Pagan's execution of this Agreement arising under the Older Workers' Benefit Protection Act (OWBPA) and the Age Discrimination in Employment Act (ADEA), as amended, and its implementing regulations. By signing this Agreement, Pagan hereby acknowledges and confirms that he: (i) has read this Agreement in its entirety and understands all of its terms; (ii) has been advised of and availed himself of his right to consult with an attorney prior to executing this Agreement; (iii) knowingly, freely and voluntarily assents to all of the terms and conditions set out in this Agreement including, without limitation, the waiver, release and covenants contained herein; (iv) is executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which he is otherwise entitled; (v) was given at least twenty-one (21) days to consider the terms of this Agreement and consult with an attorney of his choice, although he may sign it sooner if desired; (vi) understands that he has seven (7) days from the date he signs this Agreement to revoke the release in this paragraph by delivering notice of revocation to Emanuel Kataev, Esq. at 3000 Marcus Avenue, Lake Success, NY 11042-1073 by overnight delivery before the end of such seven-day period; (vii) understands that the release contained in this paragraph does not apply to rights and claims that may arise after the date on which he signs this Agreement; and (viii) in entering into this Agreement, agrees and acknowledges that he is not relying on any representation, promise or inducement made by the Company or its attorneys with the exception of those promises described in this Agreement.

e. This release and waiver of claims shall not be construed to impair Plaintiff's right to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement. Nor does this release prohibit or bar Plaintiff from providing truthful testimony

3

in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any Released Claims that cannot be released by private agreement, Plaintiff agrees to release and waive and hereby does release and waive his right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on Plaintiff's behalf, either individually or as part of a collective action, by any governmental agency or other third party.

4. **Claims Released by Defendants.** In exchange for Plaintiff's execution, compliance with, and non-revocation of this Agreement, and for other good and valuable consideration, receipt of which is hereby acknowledged, Defendants irrevocably and unconditionally fully and forever waive, release and discharge the Plaintiff from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of their execution of this Agreement, including, without limitation, any claims under any federal, state, local, or foreign law, that they may have, have ever had or may have in the future against Plaintiff, including but not limited to those arising out of, or in any way related to Plaintiff's employment with the Company and any actual or alleged act, omission, transaction, practice, conduct, occurrence or other matter, whether or not Defendants have previously filed such a claim.

5. **Plaintiff's Representations and Warranties**.  Plaintiff hereby represents, warrants, acknowledges, and affirms as follows:

   a. that he has not filed or permitted anyone to file on his behalf, any complaints, charges or claims for relief against the Company with any local, state or federal court or administrative agency other than the Lawsuit;

   b. that he has been paid and has received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which he may be due for any reason, except as provided in this Agreement;

   c. that he has no known workplace injuries or occupational diseases and has been provided and/or has not been denied any leave requested under the Family and Medical Leave Act; and

   d. that he does not wish to be employed by the Company and will not seek employment with the Company in the future and that he shall no longer appear on the Defendants' premises.

6. **Stipulation of Dismissal; Retention of Jurisdiction.** The parties shall file a stipulation of dismissal with prejudice as to all claims brought against all Defendants in the Action at the same time as any motion for settlement approval to the Court. Notwithstanding the filing of the Stipulation of Dismissal, the parties agree that this Court, the United States District Court, Southern District of New York, will retain jurisdiction over this matter in the event either party defaults with respect to their obligations under the Agreement and to enforce the terms of the Agreement until the full Settlement Funds have been received by Plaintiffs.  If the Defendants default with respect to their obligations under the Agreement, the Court may restore this action and return the parties to their positions before executing this Agreement.

7. **Non-Disparagement.** Plaintiff, Clayton, and Gwen each agree that they shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to the other or the Company. For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of the Company, Plaintiff, Alvin, and Gwen in the eyes of an ordinary and reasonable person in the community, but will not preclude the Plaintiff, the Corporate Defendant, Alvin, and Gwen from making good faith statements in the context of any judicial, administrative, arbitration, mediation or other legal proceeding or preclude Plaintiff from making truthful statements about this case.

8. **Response to Inquiries on Employment.** If a prospective employer of Plaintiff contacts the Company seeking an employment reference, the Company will only provide Plaintiff's dates of employment and his position held with the Company.

9. **Severability.** The provisions of this Agreement are severable. If any provision of this Agreement is held invalid, the invalidity shall not affect other provisions or application of the Agreement that can be given effect without the invalid provision or application.

10. **Non-Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns. The Company may assign this Agreement without notice in its sole discretion.

11. **Headings**. The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

12. **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

13. **Representation by Counsel and Entire Agreement**. This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior discussions, agreements or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties, and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein.

14. **Applicable Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

15. **Voluntary Agreement.** By signing in the space provided below, Plaintiff agrees and affirms that:

    a.    He was advised to and has carefully read and fully understands all of the provisions of this Agreement;

5

b. He has had at least twenty-one (21) days to review consider and execute this Agreement and has consulted with his attorney of choice before executing this Agreement;

c. This Agreement is legally binding, and by signing it, Plaintiff understands that he is giving up certain rights, including his right to pursue any Released Claims and agrees not to file any Released Claims;

d. No promise or representation of any kind or character has been made by the Company or by anyone acting on its behalf to induce Plaintiff to enter into this Agreement, and Plaintiff has not been forced or pressured in any way to sign this Agreement; and

e. Through this Agreement, Plaintiff is releasing Released Claims in exchange for the Settlement Payment described herein and agrees not to file any Released Claims;

f. Plaintiff knowingly and voluntarily agrees to all of the terms set forth in this Agreement, and intends to be legally bound by them.

---

**Joseph Pagan**                                           DATE: ____/_____/_____

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF _____ )

On this _____ day of _____ 2022 before me personally came Joseph Pagan, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement and General Release, and he duly acknowledged to me that he executed the same.

_____
Notary Public

---

**Alvin and Friends, LLC**
By: Alvin Clayton                                          DATE: 12/9/22

Its: Managing Member

**Alvin Clayton, individually**                            DATE: 12/9/22

**Gwen Clayton, individually**                             DATE: 12/9/2022

b.  He has had at least twenty-one (21) days to review consider and execute this Agreement and has consulted with his attorney of choice before executing this Agreement;

c.  This Agreement is legally binding, and by signing it, Plaintiff understands that he is giving up certain rights, including his right to pursue any Released Claims and agrees not to file any Released Claims;

d.  No promise or representation of any kind or character has been made by the Company or by anyone acting on its behalf to induce Plaintiff to enter into this Agreement, and Plaintiff has not been forced or pressured in any way to sign this Agreement; and

e.  Through this Agreement, Plaintiff is releasing Released Claims in exchange for the Settlement Payment described herein and agrees not to file any Released Claims;

f.  Plaintiff knowingly and voluntarily agrees to all of the terms set forth in this Agreement, and intends to be legally bound by them.

_____  DATE: 12/9/22
Joseph Pagan

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF BRONX   )

On this 09 day of DEC 2022 before me personally came Joseph Pagan, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement and General Release, and he duly acknowledged to me that he executed the same.

_____
Notary Public

LEO I EGWUOGU
Notary Public - State of New York
NO. 01EG6421536
Qualified in Bronx County
My Commission Expires Sep 7, 2025

Alvin and Friends, LLC

By: Alvin Clayton                           DATE: __/__/__

Its: Managing Member

_____  DATE: 12/9/22
Alvin Clayton, individually

_____  DATE: 12/9/22
Gwen Clayton, individually

6